# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

LARA FORSMAN
5307 Skyline Boulevard
Cape Coral, FL 33914,
    Plaintiff

v.

CHAD SILVERSTEIN
277 North Parkview Avenue
Bexley, OH 43209,
    Defendant

Case No.
Judge
Magistrate Judge

**VERIFIED COMPLAINT WITH JURY DEMAND ENDORSED HEREON**

Now comes Plaintiff, Lara Forsman, and states the following as her Complaint:

<u>THE PARTIES/JURISDICTION AND VENUE:</u>

1.    Plaintiff, Lara Forsman, is an individual who maintains her principal place of residence in Lee County, Florida ("Forsman").

2.    Defendant, Chad Silverstein, is an individual who maintains his principal place of residence in Franklin County, Ohio ("Silverstein").

3.    This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. §1332(a), as the parties are citizens of two different states and the amount in controversy is in excess of $75,000.00.

4.    Venue is proper in this Court pursuant to the provisions of 28 U.S.C. §1391(b)(1), as Defendant Silverstein is a resident of this judicial district.

FACTS COMMON TO ALL COUNTS:

5. Defendant Silverstein is the chief executive officer of Choice Recovery, Inc., an Ohio corporation ("Choice"). Until substantially all of its assets were sold earlier in 2022, Choice was involved in the collections industry, and primarily collection of medical debt.

6. Plaintiff Forsman is the President of Choice with extensive experience in various financial industries.

7. In 2017, Defendant Silverstein recognized that the business of Choice had grown to a point where he required competent leadership to operate and grow the business of Choice.

8. A recruiter acting on behalf of Choice approached Forsman about potential employment opportunities at Choice, and after extensive negotiations, Forsman accepted an offer of employment as president of Choice in 2018. Silverstein was to serve as chief executive officer.

9. Forsman commenced her employment as chief operating officer of Choice in late 2018. At that time, Silverstein was the president of Choice.

10. Per the terms of her employment, after a trial period, Forsman and Choice agreed to continue her employment as chief operating officer of Choice until Silverstein agreed to promote her to president of the company.

11. Once Forsman decided to continue her employment with Choice, she and Silverstein were to enter into a formal agreement whereby Forsman would be promoted to president of the company and would eventually become an equity interest owner in the business of Choice based on her job performance as president of the company.

12. After further negotiations, on February 3, 2020, Forsman and Choice entered into an Executive Employment Agreement, a true and correct copy of which is attached hereto as Exhibit A and made a part hereof (the "Employment Agreement").

13. Per the terms of the Employment Agreement, Forsman was to continue as president of Choice, and Silverstein was to continue as chief executive officer.

14. Per Section 3.1 of the Employment Agreement, Forsman was to receive an initial annual salary of $275,000.00 per year.

15. Section 3.2 of the Employment Agreement provides in relevant part:

> Income Incentive. For each year beginning with calendar year 2020, Executive shall receive a percentage of the "net, net, net income after distributions & taxes" as described on Exhibit A.

16. Exhibit A to the Employment Agreement is a model agreed upon by the parties that sets forth an income bonus distributions described in Section 3.2 of the Employment Agreement based on various financial projections.

17. Section 3.3 of the Employment Agreement provides in relevant part:

> Interest. Executive shall be eligible to receive a right that gives her the opportunity to receive up to 50% of the value of the Company upon a sale of the Company beginning January 1, 2020 and at the end of every twelve (12) months of employment thereafter to a maximum aggregate right equal to no more than fifty percent (50%) of the aggregate number of shares of common stock issued and outstanding, with such rights being awarded as described on Exhibit A (the "Interest"). Upon a sale or other transaction resulting in a transfer to a person unrelated to the Shareholder (other than Executive) of all or substantially all the assets of the Company or at least fifty percent (50%) of the common stock of the Company, Executive shall receive the proportionate share of the net proceeds realized from such sale as described on Exhibit A (in the case of a sale of 100% of the assets or common stock, or such proportionate share as described on Exhibit A relative to the percentage of assets or common stock sold if less than 100% is sold) associated with her then current Interest percentage relative to the aggregate number of shares of common stock then issued and outstanding….Any consideration the Executive receives upon the exercise of the Interest will be ordinary taxable income to the Executive.

18. Exhibit A to the Employment Agreement is a financial model agreed upon by the parties that sets forth a vesting schedule for the shareholder interest described in Section 3.3 of the Employment Agreement based on various financial projections.

19. At the same time that Forsman and Choice executed the Employment Agreement, Choice, Silverstein, and Forsman also executed a Holders Agreement (the "Holders Agreement"), a true and correct copy of which is attached hereto as Exhibit B and made a part hereof.

20. Said Holders Agreement provides the mechanism for the transfer of stock shares as vested by operation of the Employment Agreement. It also provides for the payment to Forsman of her share of the equity in the event of a sale of substantially all of the assets or stock of Choice to a third party.

21. Article II of the Holders Agreement also established a mechanism for the management of Choice. Section 2.3.2 established that Silverstein was to be chief executive officer of Choice while Forsman was to be the president of the company.

22. Section 7.10 of the Holders Agreement provides for voluntary mediation of any dispute among any of the parties to said Holders Agreement. Said mediation provision is not mandatory. Section 7.10 provides in relevant part:

> <u>Dispute Resolution; Mediation.</u> The Holders shall be free to bring all differences of interpretation and disputes arising in connection with this Agreement to the attention of the other Holders at any time without prejudicing their harmonious relationship and operations hereunder, and the good offices and facilities of either party shall be available at all times for the prompt and effective adjustment of any and all such differences, either by mail, telephone or personal meeting under friendly and courteous circumstances. To the extent any differences with respect to or arising out of the terms of this Agreement cannot be resolved between the parties in accordance with the procedures set forth in the previous sentence…any Holder ***may*** deliver a written notice of disagreement…to the other holders specifying with

particularity the nature of the disagreement and the facts related thereto. (emphasis added).

23. Section 7.11 of the Holders Agreement provides:

Remedies Cumulative. Except as provided in Section 7.10, no remedy herein conferred upon any party is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or otherwise. No single or partial exercise by any party of any right, power or remedy hereunder shall preclude any other or further exercise thereof.

24. Section 7.12 of the Holders Agreement provides:

Enforcement Costs. If any legal action or other proceedings…is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any provision of this Agreement, the successful or prevailing party (if any) shall be entitled to recover reasonable attorney's fees, court costs and all expenses even if not taxable as court costs (including, without limitation, all such fees, costs and expenses incident to appeals), incurred in that action or proceeding, in addition to any other relief to which such party or parties may be entitled.

25. Forsman has been successful in building the business of Choice and in increasing its profitability during the course of her employment as president of the Company. Its revenues have increased as a result of her operation of the business, particularly through the COVID pandemic.

26. Attached hereto as Exhibit C and made a part hereof is a true and correct copy of the minutes of the annual meeting of the board of directors of Choice, held on February 3, 2020. Said minutes approved the financial statements for the company for the year ended December 31, 2019 and also elected Forsman president of the company.

27. Attached hereto as Exhibit D and made a part hereof is a true and correct copy of the minutes of the annual meeting of the board of directors of Choice held on February 4, 2021. Said minutes approved the financial statements for the company for the year ended

December 31, 2020, re-elected Forsman as president of the Company, and specifically approved and adopted an updated financial model to replace the one attached to the Employment Agreement as Exhibit A thereto.

28. Attached hereto as Exhibit E and made a part hereof is a true and correct copy of the minutes of the annual meeting of the board of directors of Choice held on February 8, 2022. Said minutes approved the financial statements for the company for the year ended December 31, 2021, re-elected Forsman as president of the Company, and specifically approved and adopted an updated financial model to replace the one approved at the 2021 annual meeting of the board of directors (the "Current Model").

29. Attached hereto as Exhibit F and made a part hereof is a true and correct copy of email correspondence between the parties reflecting and approving the adoption of the updated financial model of May 10, 2022.

30. As of January 1, 2022, Forsman had earned 12.15% of the issued and authorized shares of common stock of Choice, while Silverstein owned 87.85% of the issued and authorized shares of common stock of Choice.

31. Against the advice of Forsman and other advisors, Silverstein elected to sell substantially all of the assets of Choice to Wakefield & Associates, Inc. ("Wakefield"), effective as of October 3, 2022.

32. Forsman ultimately consented to the sale to Wakefield in her capacity as a minority shareholder of Choice, and the sale was consummated.

33. Forsman also agreed to continue on as an employee of Wakefield through December 31, 2022 in order to assist in the transition of the company to its new owner.

34. Per the terms of the sale to Wakefield, Forsman was to receive 12.15% of the $4,000,000 plus interest in seller financing that was part of the sale to Wakefield. She was to receive those payments directly once they begin in January 2023.

35. Silverstein has now altered the payment instructions for those installment payments so that none of them are paid directly to Forsman. He did so without the consent or approval of Forsman.

36. Per the terms of the sale, Choice retains the benefit of certain Employee Retention Tax Credits established by the CARES Act of 2022 (the "ERC Credits"). The company is entitled to receive $2,069,351.43 in ERC Credits, to be paid upon approval of the Internal Revenue Service, along with interest. To date, two payments of ERC Credits have been made, and $1,975,062.69 in ERC Credits remains to be paid to Choice.

37. When the ERC tax credits are remitted to Choice, they will be accounted for as Income and be taxed.

38. Per the terms of the Executive Agreement section 3.2 and Exhibit A as well as the Current Model, Forsman is entitled to receive 70% of the net, net, net income after distributions & taxes" for 2022.

39. Additionally, Choice has performed Payroll processing for Keep IT Simple Solutions, LLC, another unrelated entity of which Forsman is an owner("KISS") and ReStart, LLC, another unrelated entity of which Silverstein is an owner.

40. Forsman is entitled to be paid $836,444.79 plus interest, for Choice and 124,091.70 plus interest, for KISS, from the remaining balance of the ERC Credits, which are net of taxes.  Silverstein refuses to pay those ERC Credit proceeds to Forsman, in accordance with the Executive Agreement and provisions of the Current Model.

41. Per the terms of Section 3.2 of the Executive Agreement as well as the Current Model, Forsman is entitled to receive 70% of the net, net, net income after distributions & taxes for September 30, 2022 income prior to the sale of the assets of Choice which amounts to $74,000.

42. Per the terms of the Holders Agreement, Forsman is entitled to receive 12.15% of the remaining cash of Choice as of September 30, 2022 that was not a part of the sale of the assets of Choice, less estimated remaining expenses of Choice, which amounts to $24,000.

43. Per the terms and provisions of the Current Model, Forsman is owed $658,211.33 from the sale of the assets of Choice to Wakefield.

44. Despite expressly and explicitly approving the Current Model, Silverstein claims that Forsman is not entitled to these amounts.

45. Silverstein has taken his proportionate share of both the proceeds of sale of Choice as well as the remaining balance of funds in the company's bank account without making similar distributions to Forsman, all in violation of the terms and provisions of both the Employment Agreement and the Holders Agreement.

46. Further, Silverstein has cut off Forsman's access to Choice's bank accounts, meaning that she has no ability to monitor expenditures, withdrawals, and the like pertaining to Choice.

47. Silverstein has stated to Forsman that he intends to "screw her over again" and that she will have to sue him in order to get paid what the Current Model indicates she should be paid, so mediation will be a fruitless exercise.

COUNT ONE: DECLARATORY JUDGMENT

48. Forsman realleges the allegations set forth in paragraphs 1 through 47 as if fully rewritten herein.

49. Pursuant to the provisions of 28 U.S.C. §2201(a), Forsman is entitled to a declaration of the rights and obligations of the parties with respect to the Holders Agreement and to the Current Model, to-wit: declaring that, pursuant to said Current Model, she is entitled to be paid the $1,716,747.82 from the proceeds of sale of Choice, the ERC Credits and the Income and Equity of Choice as of September 30, 2022.

50. She is also entitled to a declaration that she is not required to pay anything back to Choice pursuant to the Current Model. Forsman is willing to pay any Federal taxes resulting from these proceeds directly to the IRS.

COUNT TWO: BREACH OF FIDUCIARY DUTY

51. Forsman realleges the allegations set forth in paragraphs 1 through 50 as if fully rewritten herein.

52. By disbursing more than his proportionate share of the proceeds of sale of Choice and the operating funds of the company to himself without making a similar disbursement to Forsman, Silverstein has breached his fiduciary duty of good faith, fair dealing, and loyalty to Forsman.

53. Further, by cutting off Forsman's access to the bank accounts of Choice, Silverstein has breached his fiduciary duty of good faith, fair dealing, and loyalty to Forsman.

54. As a consequence of Silverstein's numerous breaches of fiduciary duty, Forsman has suffered, and continues to suffer, damages.

COUNT THREE: BREACH OF CONTRACT

55. Forsman realleges the allegations set forth in paragraphs 1 through 54 as if fully rewritten herein.

56. Silverstein has breached the terms and provisions of both the Employment Agreement and the Holders Agreement.

57. As a consequence of Silverstein's breaches of the Employment Agreement and the Holders Agreement, Forsman has suffered, and continues to suffer, damages.

COUNT FOUR: UNJUST ENRICHMENT

58. Forsman realleges the allegations set forth in paragraphs 1 through 57 as if fully rewritten herein.

59. Forsman conferred a benefit upon Silverstein by fully and competently performing all of her contractual duties pursuant to the Employment Agreement by growing the business of Choice and increasing its sale value.

60. Silverstein knowingly accepted and retained the benefit of Forsman's performance.

61. It would be unjust for Silverstein to retain the benefit of said performance without adequately compensating Forsman for said benefits.

62. Silverstein has been unjustly enriched at the expense of Forsman.

63. As a consequence of the unjust enrichment of Silverstein, Forsman has suffered, and continues to suffer damages.

COUNT FIVE: ACCOUNTING

64. Forsman realleges the allegations set forth in paragraphs 1 through 63 as if fully rewritten herein.

65. Forsman is entitled to a full accounting of all credits, debits, and other accounting entries pertaining to Silverstein's treatment of the finances of Choice.

WHEREFORE, Plaintiff Lara Forsman demands that judgment be entered in her favor as follows:

A. As to the allegations set forth in Count One of the Complaint, that the Court, and pursuant to the provisions of 28 U.S.C. § 2201(a), a declaration of the rights and obligations of the parties with respect to Holders Agreement and to the Current Model, that to-wit: declaring that, pursuant to said Current Model, she is entitled to be paid the $1,716,747.82 from the proceeds of sale of Choice and the ERC Credits and also declaring that she is not required to pay anything back to Choice pursuant to the Current Model;

B. As to the allegations set forth in Count Two of the Complaint, that the Court award her damages in an amount to be determined at trial, but in no event less than the sum of $75,000.00, along with an award of punitive damages of no less than $1,000,000.00, plus interest accruing at the legal rate and her costs and expenses incurred herein;

C. As to the allegations set forth in Count Three of the Complaint, that the Court award her damages in an amount to be determined at trial, but in no event less than the sum of $75,000.00, plus interest accruing at the legal rate and her costs and expenses incurred herein;

D. As to the allegations set forth in Count Four of the Complaint, that the Court award her damages in an amount to be determined at trial, but in no event less than the

    sum of $75,000.00, plus interest accruing at the legal rate and her costs and expenses incurred herein;

E. As to the allegations set forth in Count Five of the Complaint, for an order that Defendant Silverstein provide a full accounting to Forsman for all financial dealings associated with the operation of Choice;

F. As to all Counts of the Complaint, that she be awarded all of her reasonable litigation expenses, including her attorney's fees incurred, pursuant to the provisions of Section 7.12 of the Holders Agreement; and

G. Granting her such other relief as the Court deems just and appropriate.

    Respectfully submitted,

    COOK, SLADOJE & WITTENBERG CO., L.P.A.

    */s/ Eric J. Wittenberg*
    Eric J. Wittenberg (0038709)
    5131 Post Road
    Suite 100
    Dublin, OH 43017
    (614) 230-0670
    Fax: (614) 221-5777
    eric@cswcolpa.com
    *Trial Attorney for Plaintiff Lara Forsman*

OF COUNSEL:

Joshua S. Nagy (0097099)
COOK, SLADOJE & WITTENBERG CO., L.P.A.
5131 Post Road
Suite 100
Dublin, OH 43017
(614) 230-0670
Fax: (614) 221-5777
jnagy@cswcolpa.com

**JURY DEMAND**

Plaintiff hereby demands that this matter be heard by a jury of eight (8).

                                                   */s/ Eric J. Wittenberg*
                                                   Eric J. Wittenberg (0038709)

## VERIFICATION

The undersigned hereby verifies that, to the best of her information and belief, the foregoing Complaint is true and correct.

*Lara Forsman*
Lara Forsman