## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**LARA FORSMAN,**

      **Plaintiff,**        **:**

  **v.**

**CHAD SILVERSTEIN,** *et al.*,

      **Defendants.**     **:**

           **Case No. 2:22-cv-4415**
           **Chief Judge Sarah D. Morrison**
           **Magistrate Judge Chelsey M.**
           **Vascura**

## OPINION AND ORDER

The Court ordered Ms. Forsman to brief the issue of whether she has standing to assert a claim for Employee Retention Credit ("ERC") funds that she alleges belong to her company Keep IT Simple Solutions, LLC ("KISS"). (ECF No. 68 ("Jan. 17, 2025 Order").) Ms. Forsman filed her Brief arguing that she has standing or, in the alternative, that the Court should allow her to amend her Amended Complaint (ECF No. 8 (sealed) / ECF No. 16 (redacted)) to add KISS as a plaintiff (ECF No. 75 ("Pl.'s Br.").) Defendants responded. (ECF No. 81 ("Defs.' Resp.").)

For the reasons set forth below, the Court **DISMISSES** Ms. Forsman's breach of contract claim (Count IV) as to KISS's ERC funds and **DENIES** her request to amend her Amended Complaint.

I.    BACKGROUND[1]

Choice Recovery, Inc. n/k/a Built to Leave, Inc. ("Choice Recovery") was a debt collection agency and Chad Silverstein was its CEO and Board Chairman as well as its sole owner and shareholder. (ECF No. 39-3 ("First Silverstein Aff."), ¶¶ 1–2, 5.)

Ms. Forsman is a minority owner and the managing member of KISS, an Ohio LLC formed in May 2019; KISS has one other member, Heather Lohnes. (ECF No. 79-1 (sealed) / ECF No. 80-1 (redacted), PAGEID # 2059–62.)

A.    **Choice Recovery applies for ERC funds on behalf of KISS.**

Choice Recovery provided KISS with IT and other support services, including payroll processing, so the two entities shared a payroll platform. (ECF No. 44-1 (sealed) / ECF No. 45-1 (redacted), 75:14–77:17; ECF No. 56-1 (sealed) / ECF No. 47-1 (redacted), ¶¶ 40–42.) In 2022 and 2023, Choice Recovery applied for ERC funds on behalf of KISS and it received ERC funds in August 2022 and January 2023.

In October 2022, Defendants entered into an agreement to sell substantially all of Choice Recovery's assets, but Choice Recovery retained any ERC funds as part of the sale. (ECF No. 39-9 (sealed) / ECF No. 46-1 (unredacted); First Silverstein Aff., ¶¶ 10–12.)

B.    **The Court orders Ms. Forsman to brief the issue of whether she has standing to assert a claim for KISS's ERC funds.**

_____

[1] The Court's Jan. 17, 2025 Order summarizes the factual and procedural history of this case; the Court restates here the facts relevant to the parties' standing briefing.

2

Ms. Forsman brought this action against Choice Recovery and Mr. Silverstein seeking, among other things, to recover ERC funds that Choice Recovery received on behalf of KISS.

In its Opinion and Order on the parties' cross motions for summary judgment, the Court resolved all of Ms. Forsman's claims except for her breach of contract claim for KISS's ERC funds. (Jan. 17, 2025 Order.) The Court ordered Ms. Forsman to brief the issue of whether she has standing to assert a claim for KISS's ERC funds. (*Id.* at PAGEID # 1999.)

## II.    STANDING

### A.    Legal Standard

Pursuant to Article III of the United States Constitution, standing is necessary to the exercise of jurisdiction and "determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Once standing concerns arise—whether raised by defendants, or *sua sponte* by the Court in meeting its obligation to ensure its own jurisdiction—[p]laintiffs carry the burden to establish that standing requirements are met." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 988 (S.D. Ohio 2020) (Cole, J.) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–39 (2016)). "Federal courts must determine that a plaintiff has standing under Article III before considering whether a plaintiff has state-law standing." *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 F. App'x 18, 23 (6th Cir. 2020) (citing *Davis v. Detroit Pub. Schs. Cmty. Dist.*, 899 F.3d 437, 443–44 (6th Cir. 2018)).

3

Injury is "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 578 U.S. at 338 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A shareholder of a corporation generally cannot satisfy Article III's injury requirement when suing "'based solely on an injury to a corporation.'" *Old Blast, Inc. v. Operating Eng'rs Local 324 Pension Fund*, 663 F. App'x 454, 457 (6th Cir. 2016) (quoting *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 315 (6th Cir. 1987), *modified at* 933 F.2d 400 (6th Cir. 1991)); *see also In re Steffner*, 479 B.R. 746, 761 (Bankr. E.D. Tenn. 2012) ("[T]he property of a corporation or limited liability company belongs to that entity, not the owners of the entity[.]"). Only where a shareholder alleges injuries separate and distinct from the corporation does she have Article III standing. *Old Blast*, 663 F. App'x at 457.

## B.   Analysis

Ms. Forsman argues that she has standing because she suffered a separate and distinct injury from KISS in the form of her "lost income."[2] (Pl.'s Br., PAGEID # 2033.) She argues that the ERC funds that Choice Recovery applied for on KISS's behalf "are essentially **a refund to KISS**, which **reduced KISS's tax expense**

---

[2] Ms. Forsman's brief addresses standing under Ohio law. (Pl.'s Br., PAGEID # 2032–35.) However, she cites to *Old Blast* and concedes that she must show a separate and distinct injury from the injury suffered by KISS, so the Court will analyze her arguments under Article III.

4

and, consequently, **increased KISS's income**" and "[t]hat income should be available to distribute to Ms. Forsman and Ms. Lohnes." (*Id.* at PAGEID # 2035 (emphasis added).)

In *Old Blast*, the Sixth Circuit rejected an argument analogous to Ms. Forsman's when it found a corporation's shareholder lacked standing to challenge the garnishment of payments to the corporation because the garnishment affected the shareholder "only indirectly" by devaluing her interest in the corporation. 663 F. App'x at 457. Here, Ms. Forsman argues that she suffered "lost income" because the ERC funds would have increased KISS's income and in turn increased KISS's income distribution to her. But Ms. Forsman's "lost income" is like the "depreciation in the value of a shareholder's stock in a corporation" which "does not establish 'the type of direct, personal injury which is necessary to sustain a direct cause of action.'" *Id.* (quoting *Gaff*, 814 F.2d at 315). Accordingly, Ms. Forsman has not alleged a separate and distinct injury sufficient to satisfy Article III's injury requirement. As a result, the Court need not consider whether her claim is also barred by Ohio's state-law standing requirements.[3]

Ms. Forsman lacks Article III standing to assert a claim for KISS's ERC

---

[3] Ms. Forsman also asserts in her briefing that she is a "real party in interest." (Pl.'s Br., PAGEID # 2035.) Federal Rule of Civil Procedure 17 states that "[a]n action must be prosecuted in the name of the real party in interest." But Rule 17's real party in interest requirement is a "conceptually distinct" issue from Article III standing. *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 412 n.2 (6th Cir. 2013) (citing *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531–32 (6th Cir. 2002)) ("The Federal Rules cannot expand the subject-matter jurisdiction of the federal courts; therefore, an analysis under Rule 17 can only be conducted after a party has established its standing to sue.").

funds. Her breach of contract claim (Count VI) as to KISS's ERC funds is

**DISMISSED**.

## III. LEAVE TO AMEND

Ms. Forsman requests in the alternative that the Court grant her leave to amend her Amended Complaint to add KISS as a plaintiff.

### A. Legal Standard

Although Federal Rule of Civil Procedure 15(a) governs amendments to the pleadings, when a motion to amend is brought after the deadline set within the court's scheduling order, a party must satisfy the standards of Rule 16(b)(4), in addition to Rule 15(a). *Carrizo (Utica) LLC v. City of Girard*, 661 F. App'x 364, 367 (6th Cir. 2016). As a result, "[o]nce the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). "[T]he touchstone of the good cause inquiry under Rule 16(b) is whether the moving party acted diligently in attempting to meet the deadline set forth in the pretrial order." *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-cv-0569, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007) (Kemp, M.J.). Courts are to decide whether good cause exists under Rule 16(b) "before turning to Rule 15(a)'s more generous standard." *Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 459 (S.D. Ohio 2021) (Jolson, M.J.), report and recommendation adopted, 339 F.R.D. 455 (S.D. Ohio 2021) (Morrison, J.).

### B.    Analysis

In evaluating good cause under Rule 16(b), a plaintiff's diligence is key. *Cooke v. AT&T Corp.*, No. 2:05-cv-374, 2007 WL 188568, at *2 (S.D. Ohio Jan. 22, 2007); *see also E.E.O.C. v. U-Haul Int'l, Inc.*, 286 F.R.D. 322, 325 (W.D. Tenn. 2012) (noting that whether movant was "diligen[t] in attempting to meet the requirements of the scheduling order is the primary measure of Rule 16(b)'s 'good cause' standard").

The case schedule here established April 14, 2023, as the deadline for filing motions to amend or join parties. (ECF No. 20.) Accordingly, Ms. Forsman must demonstrate good cause for her failure to move to amend her Amended Complaint to add KISS by the deadline. But her Brief makes no effort to explain her nearly two-year delay in seeking to add KISS—she does not even acknowledge that her request is untimely. Nor does she explain why she could not have timely moved to amend to add KISS; no facts have changed since the deadline to amend, but Ms. Forsman nonetheless failed to pursue adding KISS until the Court's Jan. 17, 2025 Order raised the issue of standing.

The Court also finds that allowing Ms. Forsman to amend her Amended Complaint at this late stage of the litigation would be prejudicial to the Defendants. *See Gormley v. Precision Extrusions, Inc.*, 174 F. App'x 918, 921 (6th Cir. 2006) (citing *Leary*, 349 F.3d at 907) ("We have repeatedly held that allowing amendment after the close of discovery creates significant prejudice.")

Because Ms. Forsman has not provided any evidence or argument in support

of her diligence in attempting to comply with the case schedule, and because considering the motion would be prejudicial to Defendants, Ms. Forsman has failed to demonstrate good cause for her request to amend her Amended Complaint. Her request to amend her Amended Complaint is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Ms. Forsman's breach of contract claim (Count IV) as to KISS's ERC funds is **DISMISSED**.

The Court **DENIES** Ms. Forsman's request for leave to amend her Amended Complaint.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**